IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CAROLINE HICKETHIER,

    Plaintiff,

v.

OPINION & ORDER

SCHOOL DISTRICT OF CORNELL,
WISCONSIN,

17-cv-506-jdp

    Defendant.

---

Plaintiff Caroline Hickethier, an English teacher in the School District of Cornell, Wisconsin, alleges that the school district is paying her significantly less than comparable male teachers, in violation of the Equal Pay Act. The school district moves for summary judgment. Dkt. 19. The school district has adduced evidence that the pay disparity is because of a factor other than sex, and Hickethier fails to adduce evidence to the contrary. So the court will grant summary judgment in the school district's favor.

UNDISPUTED FACTS

The court begins with an observation: some of Hickethier's responses to the school district's proposed facts purport to dispute the proposed fact but do not cite to evidence supporting Hickethier's version of the fact, contrary to the court's procedures on motions for summary judgment. *See* Dkt. 10, at 10, 14. The court has accepted a proposed fact as undisputed where neither side disputes it, and where the proponent cites to admissible evidence in support of the fact, and the other party offers no evidence in response.

The following facts are undisputed except where noted.

Cornell is a small town located in rural Northern Wisconsin. Like many rural school districts, the School District of Cornell faces declining enrollment. It expects 107 students to enroll in its high school for the coming school year, down nearly a third from 15 years ago.

Also like many rural school districts, the School District of Cornell faces difficulties finding and retaining quality teachers. One difficulty stems from the low demand for courses in particular subjects. For example, the school district wants to offer elective chemistry courses, and therefore needs a teacher certified to teach chemistry. But because of the small class size, the school district cannot afford to hire a full-time chemistry teacher; it must either find a chemistry teacher willing to work part-time, or it must find a teacher certified in both chemistry and some other subject so that the teacher can teach full-time.

Another difficulty that the school district faces is teacher pay. In the past, the school district used a salary schedule that determined teachers' salaries based primarily on their graduate-level educational credits and years of experience. This salary schedule was the product of collective bargaining with the local teachers' union; the court will refer to it as the "old model." In 2014, after the passage of 2011 Wisconsin Act 10, which altered public employees' collective bargaining rights, the school district established a new compensation model. The new model establishes a base wage for teachers and allows for supplemental pay based on graduate-level educational credits and years of experience, similar to the old model. But it also allows for "other incentives" to be provided "as needed" on an individual basis. Dkt. 22-1. For example, the school district may provide "hiring bonuses, special pay for specific accomplishments or projects, [or] incentives for positions with limited candidate pools." *Id.* New teachers hired by the school district in 2014 or later are paid under the new model. Teachers who were already

working at the school district in 2014 have been paid under whichever model gives them a higher salary.

The school district also provides its employees with benefits, including health insurance. If an employee declines health insurance coverage, the school district pays the employee the amount of the premium. The school district's superintendent believes that under the Affordable Care Act, "the School District can deny health insurance to up to five percent [of its employees] or five employees, whichever is greater." Dkt. 22, ¶ 51. When the school district "denies" an employee health insurance coverage in this way, it adds the amount of the premium, less a few thousand dollars, to the employee's annual salary.[1]

Once school district employees retire, they receive a monthly pension. The pension is administered not by the school district but by the Wisconsin retirement system. The amount of an employee's monthly pension is based, in part, on the employee's three highest years of salary earnings.

With this background, the court now turns to the three teachers at issue in this suit: Hickethier and the two male comparators that she has identified, Richard Erickson and Steven Parker. All three teach middle and high school students in Cornell.

**Caroline Hickethier.** Hickethier joined the school district in 1989, after graduating from college with a degree in English. In 1998, Hickethier obtained a masters of arts in education while still working for the school district. She also has 31 additional educational

---

[1] The school district may be referring to what's commonly known as the "95 percent rule" concerning the employer shared responsibility provisions of the Affordable Care Act. *See* 26 C.F.R. § 54.4980H-4(a). The reduction in the amount of the premium may be meant to make up for the additional taxes and benefits that the school district pays as a result of the increased salary, so that the school district ends up paying no more than it would have if the employee were offered health insurance coverage and accepted it.

credits. She is certified to teach English, which is what she does for the school district. Since the passage of Act 10, Hickethier has continued to be paid under the old model, which provides her with a higher salary than the new model would. For the 2015–2016 school year, Hickethier received a salary of $57,487.15. She also declined health insurance coverage, so she received an extra $17,400. For the 2016–2017 school year, Hickethier received a salary of $59,000. And she declined health insurance coverage in exchange for $18,000. For the 2017–2018 school year, Hickethier received a salary of $60,400. Once again, she declined health insurance coverage, so she received an extra $19,760.

**Richard Erickson.** Erickson joined the school district in 1986. Before that, he worked in another school district for three years. He has a bachelor's degree and 32 additional educational credits. He is certified to teach agriculture education. Since the passage of Act 10, Erickson has continued to be paid under the old model, which provided him a higher salary than the new model would. For the 2014–2015 school year, Erickson received a salary of $48,587.15; he also declined health insurance coverage in exchange for a cash payment, just like Hickethier. That year, he told the superintendent that he might retire. The superintendent, who in the past had found it difficult to recruit a quality teacher for the agriculture technology classes that Erickson taught, proposed a change to Erickson's pay to encourage him to stay on: the school district would deny Erickson health insurance coverage and add the amount of the premium, less a few thousand dollars, to Erickson's salary. The total amount of money that Erickson received from the school district would decrease slightly, but switching the health insurance premium into Erickson's salary would bump up Erickson's monthly pension upon retirement. Erickson accepted. Several other employees of the school district are subject to this arrangement, but Erickson is the only teacher. So for the 2015–2016 school year, Erickson

4

received a salary of $65,587.15. For the 2016–2017 school year, Erickson received a salary of $67,600. For the 2017–2018 school year, Erickson received a salary of $69,360. He then retired.

**Steven Parker.** Steven Parker joined the school district in 2015. Before that, he worked in a neighboring school district for 17 years. Parker also has a master's degree and 15 additional educational credits. He is certified to teach biology and chemistry. The school district hired him to teach courses in those subjects after two science teachers retired and the school district was unable to find a suitable teacher to replace them permanently, forcing it to bring back the former science teachers from retirement. Parker has always been paid under the new model. For the 2015-2016 school year, Parker received a salary of $67,000. For the 2016–2017 school year, Parker received a salary of $69,000. For the 2017–2018 school year, Parker received a salary of $71,000. A break-down of Parker's pay under the new model reveals that each year, $13,500 of his total salary comes from the "other incentives" category. Parker is the only teacher in the school district to receive this type of supplemental pay. According to the school district's superintendent, Parker receives this $13,500 incentive because of his dual certification, which allows him to teach the classes that the school district needs him to teach, and because it is difficult to find teachers certified to teach chemistry. (After Parker left the neighboring school district, it filled his spot by hiring a new teacher with a biology certification and reassigning a current teacher with a chemistry certification to teach some of Parker's classes.)

ANALYSIS

The Equal Pay Act, 29 U.S.C. § 206(d)(1), prohibits employers from discriminating between employees on the basis of sex by paying different wages for equal work on jobs requiring equal skill, effort, and responsibility, and which are performed under similar working conditions. "To establish a prima facie case under the Equal Pay Act, a plaintiff must show: (1) that different wages are paid to employees of the opposite sex; (2) that the employees do equal work which requires equal skill, efforts, and responsibility; and (3) that the employees have similar working conditions." *Fallon v. Illinois*, 882 F.2d 1206, 1208 (7th Cir. 1989). Hickethier claims that she, Erickson, and Parker perform equal work under similar working conditions but that she is paid less than Erickson and Parker. If Hickethier establishes a prima facie case, the burden shifts to the school district to show that the pay disparity is due to (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any other factor other than sex. 29 U.S.C. § 206(d)(1)(i)–(iv); *Fallon*, 882 F.2d at 1211. "The fourth affirmative defense (any other factor other than sex) is a broad 'catch-all' exception and embraces an almost limitless number of factors, so long as they do not involve sex." *Fallon*, 882 F.2d at 1211.

To succeed on its motion for summary judgment, the school district must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law on the merits. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummet v. Sinclair Broad. Grp., Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). If Hickethier fails to establish the existence of an essential element on which she will bear the burden of proof at trial, summary judgment in the school

district's favor is proper. *See Celotex*, 477 U.S. at 322. All reasonable inferences from the facts in the summary judgment record must be drawn in Hickethier's favor as the nonmoving party. *Baron v. City of Highland Park*, 195 F.3d 333, 338 (7th Cir. 1999).

Here, the court need not consider whether Hickethier establishes a prima facie case of discrimination because even if she has, the school district has adduced evidence that Parker's and Erickson's increased wages are due to a factor other than sex—Parker and Erickson teach courses that are in high demand and have a limited supply of qualified teachers. The school district offered Parker a higher salary to convince him to switch employers, and it offered Erickson the guarantee of a higher pension to convince him to keep teaching for another three years. Hickethier has already been at the school district for many years, and there's no evidence that she's threatened to retire, so the school district has no reason to incentivize her to stay. And until Hickethier approaches retirement, she actually earns more money by "declining" health insurance coverage rather than having it "denied" to her. There's no indication that the school district has set up this system to discriminate based on sex or that the system has a discriminatory effect.

Hickethier's three arguments to the contrary fall flat. First, she argues that the neighboring school district was able to find a replacement for Parker, and therefore the Cornell school district could have found someone else, too. But Parker's old classes were taken over by two teachers: a new one with a biology certification and one with a chemistry certification who had already been working at the school. The Cornell school district didn't have that option, because it didn't have any other teachers with a chemistry certification.

Second, Hickethier argues that the school district doesn't adduce any evidence of an effort to fill Erickson's spot other than the superintendent's declaration. But the

7

superintendent's declaration, which recounts past difficulties in hiring teachers certified to teach the courses Erickson taught, *see* Dkt. 22, ¶¶ 55, 59–60, is evidence sufficient to allow a juror to find that the superintendent wanted Erickson to keep teaching because he was concerned that he wouldn't be able to find a replacement. There's no requirement that the school district actually post the job opening before trying to incentivize Erickson to stay—especially when the incentive the school district gave to Erickson didn't cost it any more money.

Finally, Hickethier contends that a female math teacher, Nancy Schlageter, "asked the superintendent to get the same deal as Erickson in her last three years before her retirement," but the superintendent refused. Dkt. 29, at 11. But Hickethier has no evidence to support this contention. The document she cites is an email between Schlageter and the superintendent discussing the amount of the 2018–2019 base pay increases for teachers on the old model and the new model; it does not mention health insurance premiums, retirement, or pensions. *See* Dkt. 32, ¶ 5 and Dkt. 32-3. And there's no evidence that Hickethier has asked to have her health insurance premium paid to her as part of her salary, either. Again, until she's three years away from retirement, she's better off getting the amount of the premium paid to her as a lump sum, anyway.

Because no reasonable juror could find that the pay disparity between Hickethier and her comparators is because of sex, rather than some other factor, the court will grant summary judgment in the school district's favor.

ORDER

IT IS ORDERED that:

1. Defendant School District of Cornell's motion for summary judgment, Dkt. 19, is GRANTED.

2. The clerk of court is directed to enter judgment accordingly and close this case.

Entered July 27, 2018.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge